UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

U.S. COMMODITY FUTURES         :
TRADING COMMISSION,
                               :
          Plaintiff,
                               :
     - against -
                               :
4X SOLUTIONS, INC., et ano,
                               :
          Defendants.
------------------------------------------------------------x

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED:   12/28/15   |

**REPORT AND
RECOMMENDATION
TO THE HONORABLE
RICHARD M. BERMAN**

13cv2287-RMB-FM

**FRANK MAAS**, United States Magistrate Judge.

I.   Introduction

In this action, plaintiff U.S. Commodity Futures Trading Commission ("CFTC") alleges that defendant 4X Solutions, Inc. ("4X") and its president, defendant Whileon Chay ("Chay") (together, "Defendants"), violated section 4b(a)(2)(A)-(C) of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 6b(a)(2)(A)-(C).  (ECF No. 1 ("Complaint")).  On April 17, 2015, following the Defendants' failure to appear, Your Honor entered an Order of Final Judgment by Default, Permanent Injunction, Civil Monetary Penalty and Other Statutory and Equitable Relief ("Final Judgment Order"), and referred the case to me to conduct an inquest concerning the disgorgement and civil monetary penalty ("CMP") sought by the CFTC.  (ECF No. 49).

On May 12, 2015, I directed that the CFTC file its inquest papers by June 15, 2015, and that the Defendants respond by July 15, 2015.  (ECF No. 50).  On May 22,

2015, I granted the CFTC's request for alternative service upon the Defendants. (ECF Nos. 51, 52). Thereafter, the CFTC timely served and filed its submission, (see ECF Nos. 56-57), but, as in prior stages of this lawsuit, the Defendants failed to respond.[1]

For the reasons set forth below, I recommend that a money judgment be entered against the Defendants, jointly and severally, in the amount of $10,980,904. The CFTC should also be awarded post-judgment interest pursuant to 28 U.S.C. § 1961.

II.     Facts

The Final Judgment Order incorporated the well-pleaded facts alleged in the Complaint and, together with the CFTC's inquest papers, establishes the following:

Plaintiff CFTC is an independent federal regulatory agency charged with the administration and enforcement of the CEA. (Final Judgment Order, Findings of Fact ("FOF"), ¶ 1). Defendant 4X is a New York corporation. (Id. ¶ 2). Defendant Chay was the president of 4X. (Id. ¶ 3). 4X never registered with the CFTC and was not a financial institution, registered broker dealer, insurance company, financial holding company, or investment banking company. (Id. ¶ 2).

From April 16, 2008, through at least November 2010, the Defendants fraudulently solicited and convinced at least nineteen investors to entrust them with funds for the purpose of participating in a pooled investment vehicle trading off-exchange

---

[1] The Defendants' failure to respond cannot be attributed to lack of notice. Although it appears that Chay is seeking to avoid arrest on related criminal charges, (see United States v. Chay, 14 Cr. 836 (KMW), ECF No. 2) (arrest warrant), copies of the CFTC's inquest papers were served on Chay by delivery to his known relatives in the United States and on 4X by delivery to the New York Secretary of State, (ECF Nos. 57-58).

leveraged or margined foreign currency contracts ("forex").  (Final Judgment Order at 1; FOF ¶ 4).  In so doing, the Defendants made a number of false or misleading representations and omissions, including promising participants 24 to 36 percent investment returns and minimizing the risks of forex trading.  (FOF ¶¶ 5-7).  In reality, the Defendants were operating a Ponzi scheme designed to defraud pool participants.  (Id. ¶ 8).

Lured by the Defendants' misrepresentations, pool participants transferred a total of $4,800,000 to 4X, none of which remains in any 4X accounts.  (Id. ¶¶ 11, 17).  Chay actually deposited only a portion of those funds, totaling $2,995,000, into trading accounts.  (Id. ¶¶ 14-15).  Of this amount, Chay lost approximately $1,985,754 by trading forex and forex options, (id. ¶¶ 16-17), and an additional $69,020 by trading on-exchange futures and options, (ECF No. 56-1 (Decl. of Kara L. Mucha, dated June 15, 2015 ("Mucha Decl.")), ¶ 23).  The Defendants' total trading losses, therefore, amounted to approximately $2,054,774.  (Id.).  Chay never reported these trading losses to pool participants, nor did he disclose that only a portion of their funds would actually be used for forex trading.  (FOF ¶ 18).

Accordingly, during the relevant period, the Defendants misappropriated a total of $2,745,226 of pool participants' funds ($4,800,000 - $2,054,774).  (Id. ¶ 19; see also Mucha Decl. ¶ 35).  Of this sum, approximately $1,731,600 was used to pay purported profits and/or investment returns to some pool participants.  (FOF ¶ 21).  The

Defendants also used participants' funds to pay Chay's personal expenses, including stays luxury resorts, meals at expensive restaurants, and exotic car rentals.  (Id. ¶ 22).

The Defendants concealed their unsuccessful forex trading, misappropriation, and operation of a Ponzi scheme by falsely representing to pool participants that they were profitably trading forex on their behalf.  For example, Chay issued monthly 4X account statements reporting "earnings" and issued checks to participants purporting to consist of trading profits or investment returns, which in fact came from the principal of other pool participants' deposits.  (Id. ¶¶ 21, 23-25).  Chay had virtually complete authority over 4X, did not report to anyone, and controlled the disposition of all pool participants' funds, except to the extent that he delegated trading authority to unrelated third parties.  (Id. ¶ 26).

III.   Discussion

   A.   Need for Hearing

Although a plaintiff seeking to recover damages against a defaulting defendant must prove its claim through the submission of admissible evidence, see Smith ex rel. Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217, 224 (S.D.N.Y. 2003), a hearing is unnecessary so long as (1) the Court has determined the proper rule for calculating damages, see Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999), and (2) the plaintiff's evidence establishes, with reasonable certainty, the basis for the damages specified in the default judgment, see Transatlantic

Marine Claims Agency Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997). Here, because both requirements have been met, there is no need for a hearing.

  B.  <u>Law Applicable to CFTC Remedies</u>

  Under the CEA, it is unlawful to cheat, defraud, or deceive, to make or cause to be made a false report or statement, to enter or cause to be entered a false record, or to attempt to cheat, defraud, or deceive other persons in connection with futures trading on their behalf. 7 U.S.C. § 6b(a)(2)(A)-(C).

  A court finding a violation of the CEA has "broad equitable power to fashion appropriate remedies, including ordering that culpable defendants disgorge their profits." See <u>CFTC v. AVCO Fin. Corp.</u>, 28 F. Supp. 2d 104, 121 (S.D.N.Y. 1998) (citation omitted), <u>modified on other grounds</u>, 1998 WL 524901 (S.D.N.Y. Aug. 21, 1998), <u>rev'd in part sub nom.</u> <u>CFTC v. Vartuli</u>, 228 F.3d 94 (2d Cir. 2000). "The disgorgement remedy is not intended to compensate investors; rather, it is intended to deprive the violator of his ill-gotten gains and to further the deterrence objectives of the CEA." <u>Id.</u> (citations omitted); see also <u>Official Comm. of Unsecured Creditors of WorldCom, Inc. v. SEC</u>, 467 F.3d 73, 81 (2d Cir. 2006) ("Disgorgement merely requires the return of wrongfully obtained profits; it does not result in any actual economic penalty . . . .") (citation omitted ); <u>CFTC v. EJS Capital Mgmt., LLC</u>, No. 14 Civ. 3107 (CM), 2015 WL 5679688, at *6 (S.D.N.Y. Sept. 24, 2015) ("Disgorgement is not intended to be punitive; it is remedial in nature.").

The CEA and the regulations thereunder also authorize courts to impose a CMP for each statutory or regulatory violation of up to the greater of $140,000 or triple the offender's monetary gain. 7 U.S.C. § 13a-1(d)(1)(A); 17 C.F.R. § 143.8(a)(1)(ii)(D) (adjusting statutory amount to $140,000 for violations committed after October 23, 2008). As the CFTC has explained:

> Civil monetary penalties serve a number of purposes. These penalties signify the importance of particular provisions of the Act and the [CFTC]'s rules, and act to vindicate these provisions in individual cases, particularly where the respondent has committed violations intentionally. Civil monetary penalties are also exemplary; they remind both the recipient of the penalty and other persons subject to the Act that noncompliance carries a cost. To effect this exemplary purpose, that cost must not be too low or potential violators may be encouraged to engage in illegal conduct.

In re GNP Commodities, Inc. [1990-92 Transfer Binder] Com. Fut. L. Rep. (CCH) ¶ 25,360 at 39,222 (CFTC 1992) (quoted in CFTC v. Rolando, 589 F. Supp. 2d 159, 173 (D. Conn. 2008)). In deciding the amount of a CMP, "[t]he standard is that the sanction must be rationally related to the offense." CFTC v. Paragon FX Enterprises, LLC, No. 11 Civ. 7740 (FM), 2015 WL 2250390, at *5 (S.D.N.Y. Feb. 2, 2015) (citation omitted). "Accordingly, the court should focus on the gravity of the misconduct, considering such factors as '(1) the relationship of the violation at issue to the regulatory purposes of the Act; (2) respondent's state of mind; (3) the consequences flowing from the violative conduct; and (4) respondent's post-violation conduct.'" Id. (quoting In re Grossfeld, 1996 WL 709219, *12 (CFTC Dec. 10, 1996)). "Moreover, 'courts should be realistic

and not set a figure which is impossible for a defendant to comply with due to lack of monetary resources.'" Id. (quoting AVCO Fin. Corp., 28 F. Supp. 2d at 121).

    C.    Damages

Your Honor previously adjudged the Defendants jointly and severally liable under the CEA for, among other wrongs: (1) fraudulently soliciting pool participants by making material misrepresentations and/or failing to disclose material facts to them; (2) misappropriating pool participants' funds; (3) misrepresenting the profitability of trading accounts; (4) failing to disclose that they were operating a Ponzi scheme; and (5) knowingly issuing false monthly account statements and false profit checks to pool participants. (Final Judgment Order, Conclusions of Law, ¶¶ 7-8)). Accordingly, pursuant to the Final Judgment Order, the only remaining questions what amounts should be awarded as disgorgement and as a CMP. (Final Judgment Order, Order for Relief, ¶¶ 4, 13).

        1.    Disgorgement

The uncontradicted evidence establishes that the pool participants' transfers to Defendants totaled $4,800,000, none of which remains in any 4X accounts. (Mucha Decl. ¶¶ 13, 24, 35). Of this sum, $2,745,226 was misappropriated for such purposes as Chay's personal expenses, disbursements to pool participants, unauthorized securities trading, and 4X's operational expenses. (See id. ¶¶ 23, 35; FOF ¶ 19).

The $2,745,226 that the CFTC seeks as disgorgement is thus simply the approximate amount of the Defendants' ill-gotten profits. Requiring the return of such

sums is precisely the purpose of the disgorgement remedy.  See, e.g., EJS Capital Mgmt., LLC, 2015 WL 5679688, at *6.  The CFTC should therefore be awarded disgorgement in the amount of $2,745,226.

        2.     CMP

The egregious facts of this case also warrant a substantial CMP of $8,235,678, equal to triple the disgorgement amount.  The Defendants concocted a fraudulent Ponzi investment scheme and convinced nineteen investors to invest nearly five million dollars in that scheme to their great detriment.  The Defendants' reprehensible conduct included not only fraudulently obtaining the funds from investors, but also hiding the true nature of their activities.  Moreover, the Defendants have proffered no reasons why they should be treated leniently.  In such circumstances, it is clear that trebling the Defendants' monetary gain is appropriate.  See, e.g., CFTC v. SK Madison Commodities, LLC, No. 14 Civ. 02025 (SHS), 2014 WL 3887755, at *5 (S.D.N.Y. June 9, 2014) (trebling monetary gain for CMP, noting "[d]efendants have not denied that they committed repeated violations of core provisions of the CEA and Regulations that fraudulently divested 27 pool participants of $1.3 million"); CFTC v. MF Global Inc., No. 11 Civ. 7866 (VM), 2013 WL 6923494, at *3 (S.D.N.Y. Nov. 8, 2013) (awarding treble CMP of $100 million); CFTC v. Kim, No. 11 Civ. 1013 (DLC), 2011 WL 1642772, at *7 (S.D.N.Y. Apr. 15, 2011) (finding treble CMP "appropriate . . . because Defendants' violations of the Act and Commission Regulations were intentional and directly impacted the numerous victims of this fraud").

3.  Post-Judgment Interest

Post-judgment interest on the disgorgement and CMP amounts awarded by the Court should be calculated using the Treasury Bill rate specified in 28 U.S.C. § 1961.

IV. Conclusion

For the reasons set forth above, a money judgment should be entered against the Defendants, jointly and severally, in the amount of $10,980,904, consisting of disgorgement in the amount of $2,745,226 and a CMP in the amount of $8,235,678. The CFTC should also be awarded post-judgment interest pursuant to 28 U.S.C. § 1961.

V. Notice of Procedure for Filing Objections to this Report and Recommendation

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard M. Berman, to my chambers at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Berman. The failure to file these timely objections will result in a waiver of those objections for purposes of

appeal. See U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

Dated:   New York, New York
December 28, 2015

_____
FRANK MAAS
United States Magistrate Judge